GEORGE H. COSBY, III

V.

COMMONWEALTH OF VIRGINIA, *EX REL.*,
STATE CORPORATION COMMISSION

Record No. 940576

November 4, 1994

Present: All the Justices

*Charles L. Williams (Butler, Macon, Williams, Pantele & Lowndes*, on brief), for appellant.

*Michael D. Thomas (Stewart E. Farrar; Anthony Gambardella; Peter B. Smith*, on brief), for appellee.

JUSTICE WHITING delivered the opinion of the Court.

In this appeal of an order suspending an insurance agent's license and fining him for the violation of two regulatory statutes, we decide whether the evidence supports the State Corporation Commission's order.

Effective January 1, 1991, George H. Cosby, III, purchased the assets and liabilities of Auto Insurance Center, Inc., which had offices in Irvington, Tappahannock, Richmond, and Danville. Cosby continued the business operation as a sole proprietor trading as Auto Insurance Center.

Cosby directed his employees to deposit all insurance premium payments in a business account at Signet Bank branches near the business offices, and to make daily transfers of those funds from the Signet account to an account Cosby maintained at the Commonwealth Bank in Richmond. Cosby was the only person who could draw on this account.

In March 1991, Capitol Premium Plan, Inc. (Capitol), a premium finance company, complained to the Commission that Cosby had not remitted the down payments that five insureds had paid Auto Insurance Center for transmittal to Capitol. Capitol had financed the annual insurance premiums for the insureds' automobile liability insurance policies. Later, Agency Services, Inc. (ASI), another premium finance company, filed a similar complaint regarding two of its customers.

During the investigation of these complaints by the Bureau of Insurance, other alleged violations were discovered. On January 22, 1993, the Commission issued a rule to show cause against Cosby why his license to transact insurance business should not be revoked and why he should not be fined for these and other violations not involved in this appeal.

The matter was heard by a hearing examiner pursuant to the provisions of Code § 12.1-31. Following a two-day hearing, the hearing examiner reported to the Commission that Cosby had committed 16 violations of statutory provisions regulating the transaction of insurance business. The examiner recommended that Cosby's license to transact insurance business in the state be revoked, and that he be fined $500 for each violation. Overruling Cosby's objections to the report, the Commission adopted the examiner's findings of fact and conclusions of law and revoked his license, but fined Cosby only $250 for each violation. Cosby appeals to this Court.*

■ The principles governing our decision are well established. There is a presumption that the Commission's factual findings are

---

* Seven of the sixteen violations involved Cosby's violation of Code § 38.2-1804 in allowing insureds to sign incomplete premium finance agreements. Cosby did not appeal the Commission's rulings regarding these violations.

correct. *Board of Supervisors v. Appalachian Power Co.*, 216 Va. 93, 105, 215 S.E.2d 918, 927 (1975). In deciding whether the evidence supports the Commission's order, we examine the record to determine whether the order was contrary to the evidence or without supporting evidence. *Id.* And, even if the Commission's factual findings were based upon conflicting evidence, they will be sustained if supported by credible evidence. *Id.*

■ First, we consider the Commission's finding that Cosby violated the provisions of Code § 38.2-1813 in failing to remit eight insureds' down payments to the premium financing companies. In 1991, when these alleged violations occurred, Code § 38.2-1813 provided in pertinent part:

> All premiums, return premiums, or other funds received in any manner by an agent or a surplus lines broker shall be held in a fiduciary capacity. The agent or surplus lines broker shall, in the regular course of business, account for and pay the funds to the insured or his assignee, insurer, or agent entitled to the payment when due.

A summary of the evidence from the insureds, the premium finance companies, and Cosby's records follows. In 1991, the seven insureds named in the respective complaints of Capitol and ASI each made down payments on their premium financing contracts to Auto Service Center for transmittal on their behalf to Capitol and ASI. These down payments, and the monthly payments that the insureds agreed to pay to Capitol and ASI, were to reimburse these companies for their payment of the insureds' insurance premiums and to pay interest on the amounts advanced.

■ The down payments were deposited in the Signet account and, pursuant to Cosby's instructions, the funds were forthwith transmitted to Cosby's account at Commonwealth Bank. However, Cosby did not remit the down payments of these seven insureds, aggregating $889.93, to Capitol or ASI, although frequently requested to do so by these companies.

■ Additionally, the evidence indicates that on May 22, 1991, at Cosby's direction, Earl Edward Blankenship, another insured, sent a $301 check to Cosby's address in Midlothian. This check was intended as Blankenship's initial payment for the renewal of his automobile liability policy which had been issued by Regal Insurance Company (Regal). However, Cosby did not remit this

sum to Regal; consequently, Regal did not send Blankenship a renewal policy. After Blankenship complained first to Cosby and then to the Commission, Regal was contacted and issued a policy retroactive to the date that Blankenship had sent his check to Cosby.

However, Cosby never sent the money he received from Blankenship to Regal. Instead, Regal was required to deduct this sum from Cosby's commissions earned for the issuance of other insurance policies.

Although Cosby characterizes the evidence as "conflicting," he fails to state in what respects his evidence is in conflict with the evidence produced by the Commission. And even if there are conflicts in the evidence, the evidence clearly supports the Commission's finding that Cosby failed to remit any of the above down payments to the parties entitled thereto, in breach of his fiduciary duty to the insureds.

Even so, Cosby argues that his failure to remit the down payments to Capitol and ASI was not a violation of Code § 38.2-1813 because this statute did not list premium financing companies as entities to which the agent is required to pay premiums or other funds held in a fiduciary capacity. However, Cosby presented no such argument before the Commission. Accordingly, we will not consider this argument, made for the first time on appeal. Rule 5:21(i).

Next, we consider the alleged violation of Code § 38.2-1822(A), which in 1991 provided in pertinent part:

> No person shall act, and no insurer or licensed agent shall knowingly permit a person to act, in this Commonwealth as an agent of an insurer licensed to transact the business of insurance in this Commonwealth without first obtaining a license in a manner and in a form prescribed by the Commission. As used in this section, "act as an agent" means soliciting, negotiating, procuring, or effecting contracts of insurance or annuity on behalf of an insurer licensed in this Commonwealth or receiving or sharing, directly or indirectly, any commission or other valuable consideration arising therefrom.

Amy Gibbs Reynolds testified that while she was employed by Cosby, he furnished her with blank insurance applications and

premium finance agreements. According to Reynolds, although Cosby knew Reynolds had no license to solicit or negotiate this type of insurance, he permitted her to solicit and negotiate the issuance of an automobile liability policy to Jodi Elizabeth Bowles, a friend of Reynolds.

Cosby contends that he merely "permitted his secretary, Ms. Amy Reynolds, to fill out an insurance application for a friend, which [he] then reviewed and signed." However, the Commission apparently believed Reynolds and not Cosby, and we cannot say that Reynolds's testimony was incredible.

Next, Cosby argues that even if he permitted Reynolds to solicit and negotiate Bowles's insurance policy, "the Commission presented no evidence regarding what compensation, if any, Ms. Reynolds received or could have expected to receive as a result of the transaction." However, in our opinion, the Commission need not establish that Reynolds was compensated for her work in soliciting and procuring Bowles's insurance contract.

We think that the plain language of the second sentence of Code § 38.2-1822(A) covers two different situations. First, the sentence proscribes solicitation or procurement of insurance business, regardless of whether the unlicensed person was compensated for doing so. Second, it proscribes the sharing of commissions, directly or indirectly, regardless of whether the unlicensed person participated in securing the insurance business. Accordingly, we conclude that the evidence establishes Cosby's violation of Code § 38.2-1822.

In Cosby's third assignment of error, he contends that the Commission violated the provisions of Code § 38.2-219, which establishes the procedure in the show cause proceedings, thereby affecting his due process rights. Cosby's fourth assignment of error asserts that the Commission also violated the provisions of Code § 38.2-229 in failing to give him statutory immunity from prosecution based on information he voluntarily gave to the Commission. Cosby failed to assert either of these contentions before the Commission. Therefore, they will not be considered on appeal. Rule 5:21(i).

Since we find no error in the Commission's order, it will be affirmed.

*Affirmed.*